IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

RONNIE J. GREER,                    *

    Petitioner,                 *
                                CASE NO. 4:04-CR-00006

vs.                                 *
                                28 U.S.C. § 2255 No.
UNITED STATES OF AMERICA,           *   4:16-CV-00202-CDL-MSH-1

    Respondent.                 *

_____

O R D E R

"To guard against a spirit of oppression and tyranny on the part of rulers, and as the great bulwark of our civil and political liberties, trial by jury has been understood to require that the truth of every accusation, whether preferred in the shape of indictment, information or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of the defendant's equals and neighbors." *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (internal citations omitted). Thus, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. The "prior conviction exception" has created confusion as to the circumstances under which a sentencing judge may enhance a sentence based on a prior conviction. The most recent Supreme Court decision designed to

bring clarity to this area of the law produced two separate concurring opinions, one dissenting opinion joined by two Justices, and one lone dissenting opinion.[1] This confusion may also explain why the Government has changed its position in this case and now joins the Petitioner in his contention that his sentence should not have been enhanced under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).

Approximately twelve years ago, when Petitioner was first sentenced, the Government insisted that his sentence should be enhanced pursuant to the ACCA, and when this Court refused to do so under *Apprendi* principles, the Government successfully appealed that decision to the Eleventh Circuit Court of Appeals. *United States v. Greer* ("*Greer II*"), 440 F.3d 1267 (11th Cir. 2006), *vacating and superseding on denial of reh'g* 435 F.3d 1327 (11th Cir. 2006). Based on what it describes as the evolving case law in this area, today the Government joins in Petitioner's presently pending motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.[2] With no prospect of an appeal, this Court could easily grant the pending motion and declare vindication of its original position. To do

---

[1] *See Mathis v. United States*, 136 S. Ct. 2243 (2016).
[2] The United States Attorney for the Middle District of Georgia observes that its change of position in this case is "consistent with Department of Justice guidance and the position taken by the United States Attorney's Office for the Northern District of Georgia" in *United States v. Carson,* No. 1:14-CR-314 (N.D. Ga. 2016). Resp't's Resp. to Pet'r's Mot. for Reconsid. 4 n.2, ECF No. 88.

so, however, would require the Court to ignore current binding precedent, not the least of which is the Eleventh Circuit Court of Appeals prior decision in this very case. For the reasons explained in the remainder of this Order, the Court denies Petitioner's motion for reconsideration of this Court's previous order that denied Petitioner's § 2255 motion (ECF Nos. 85 & 86).

BACKGROUND

Petitioner was found guilty by a jury on September 23, 2004, of being a felon in possession of ammunition. 18 U.S.C. § 922(g)(1). The evidence presented at trial supported a finding that Petitioner was a convicted felon and was in possession of one pistol cartridge, two rifle cartridges, and one shotgun shell. No evidence was presented that he possessed any weapons. Moreover, the jury made no findings as to the violent nature of Petitioner's prior felony convictions. *United States v. Greer* ("*Greer I*"), 359 F. Supp. 2d 1376, 1378 (M.D. Ga. 2005).

At the conclusion of the trial, the Court referred the matter to the U.S. Probation Office to conduct a presentence investigation and prepare a presentence report. The presentence report prepared by the Probation Office calculated Petitioner's guideline sentence range based in part upon a factual finding that he had three previous convictions for a "violent felony" as contemplated by 18 U.S.C. § 924(e)(1), thus making him an armed

3

career criminal under the federal sentencing guidelines and the ACCA. *Id.* This finding increased Petitioner's statutory *maximum* potential imprisonment sentence of ten years for felon in possession of ammunition, 18 U.S.C. § 924(a)(2), to a statutory *minimum mandatory* sentence of fifteen years. 18 U.S.C. § 924(e)(1). Without the armed career criminal enhancement, Petitioner's guideline range was 63 to 78 months. *Id*.

It is undisputed that Petitioner had three prior felonies for violation of Georgia's terroristic threats statute, O.C.G.A. § 16-11-37. Because a defendant could violate the statute without using, attempting to use, or threatening to use physical force against another, this Court found that the fact of conviction alone under the statute does not unambiguously establish a violent felony for purposes of ACCA enhancement and that other evidence associated with the criminal conduct had to be evaluated to make that determination. *Greer I*, 359 F. Supp. 2d at 1379-81 (distinguishing the *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) "prior conviction" exception from *Apprendi*). Holding that the imposition of an enhanced mandatory minimum fifteen year prison sentence based upon non-jury factual findings would violate Petitioner's Sixth Amendment rights, this Court sentenced Petitioner to 78 months imprisonment followed by a three year period of supervised release. *Id.* at 1381.

The Government appealed, and the Eleventh Circuit vacated the Court's sentence and remanded Petitioner's case for resentencing. *Greer II*, 440 F.3d at 1276. The Court of Appeals held that because the indictments for the three underlying felonies used to enhance Petitioner's sentence indisputably established that they were "violent felonies" within the meaning of the ACCA, the Sixth Amendment did not require a jury to make that determination. *Id.* at 1273. On remand, this Court sentenced the Petitioner to fifteen years imprisonment followed by a three year period of supervised release. Amended Judgment, ECF No. 57.

Nine years passed, and in *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court decided that the residual clause of the ACCA is unconstitutionally vague. To manage the § 2255 motions generated by that decision, this Court appointed counsel to represent defendants in this district whose sentences had been enhanced under the residual clause of the ACCA to determine whether they may be entitled to relief under *Johnson.* Counsel was appointed to represent Petitioner on March 2, 2016. Order Appointing Counsel, ECF No. 72. And counsel filed a motion to correct Petitioner's sentence pursuant to 28 U.S.C. § 2255 three months later on June 21, 2016. Pet'r's Mot. to Vacate Sentence, ECF No. 75. The Government ultimately conceded that Petitioner did not qualify as an armed career criminal.

Resp't's Resp. to Pet'r's Mot. to Vacate Sentence 5, ECF No. 81. Nevertheless, the Court denied Petitioner's motion, finding that he was not entitled to relief under *Johnson* because *Johnson* only applied to the residual clause of the ACCA, and Petitioner was not sentenced under that particular clause. Order Den. Pet'r's Mot. to Vacate Sentence, ECF No. 83.

Petitioner subsequently filed a motion for reconsideration of the Court's denial of his § 2255 motion. Pet'r's Mot. for Reconsid., ECF Nos. 85 & 86. The Government now acknowledges that Petitioner was not sentenced under the ACCA's residual clause, and therefore, he is not entitled to relief under *Johnson*. Resp't's Resp. to Pet'r's Mot. for Reconsid. 3–4, ECF No. 88. But it maintains that the Court should still grant Petitioner's motion because recent decisions by the Supreme Court cast doubt on the Court of Appeals' previous determination that Petitioner's terroristic threat convictions qualify as violent felonies for purposes of the elements clause of the ACCA.[3]

---

[3] The Court notes that Petitioner has served his entire prison sentence. But if it is determined that he was improperly classified as an armed career criminal, he may be entitled to a reduction in the period of his supervised release. Moreover, if that supervised release is ever revoked and he is sent back to prison, he may be able to receive credit from the Bureau of Prisons for his previous over-served prison time. Therefore, this controversy is not moot.

## DISCUSSION

The ACCA increases the imprisonment sentence for someone convicted of being a felon in possession of a firearm or ammunition if the defendant has three prior convictions for a "violent felony." 18 U.S.C. § 924(e)(1). "Violent felony" is defined as any state or federal felony that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "elements clause"); (2) "is burglary, arson, or extortion, [or] involves use of explosives" (the "enumerated clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). Petitioner's sentence was enhanced pursuant to the elements clause based upon his three previous convictions under Georgia's terroristic threats statute, O.C.G.A. § 16-11-37. The Court of Appeals determined that those convictions had as an element the use, attempted use, or threatened use of physical force against another person.

As the Court of Appeals explained, and this Court initially found, the Georgia statute "prohibits both violent and nonviolent behavior, so proof that a defendant was convicted for violating the statute does not, without more, prove that he has been convicted of a violent felony for ACCA purposes." *Greer II*, 440 F.3d at 1273. The court further found that the

indictments introduced at the sentencing hearing for each of the three state court convictions "proved that [Petitioner's] three prior convictions were crimes of violence under the ACCA." *Id*. Two of the indictments allege that the Petitioner threatened to murder someone and the other one alleged that he threatened to commit an aggravated assault when he simulated using a pistol against someone. *Greer I*, 359 F. Supp. 2d at 1381 n.7. This Court thought "that if anything beyond the conviction itself and the statutory elements had to be considered in making the violent crime finding, the Constitution requires that the jury make it." *Greer II*, 440 F.3d at 1273. That thought was mistaken according to the Court of Appeals.

The Court of Appeals held that the sentencing judge could make that decision, particularly when it could be made by simply reviewing the conviction documents and the indictments. *See id*. at 1275 (recognizing trial judge's authority to make the ACCA violent felony determination when it can be made by looking at the records sanctioned in *Shepard v. United States*, 544 U.S. 13 (2005)). It concluded that whether Petitioner's three convictions for terroristic threats had as an element the use, attempted use, or threatened use of physical force against another person could easily be determined from the "conviction document[s] read along with the indictment[s] and in light of the statutory elements of the offense." *Id*. Accordingly, the

Court of Appeals remanded the matter with direction that Petitioner be sentenced as an armed career criminal under the ACCA. *Id*. at 1276. On remand, this Court sentenced the Petitioner to the minimum mandatory fifteen year sentence under the ACCA. Amended Judgment 2.

Petitioner and the Government now contend that the Court of Appeals got it wrong when it found that Petitioner should be sentenced as an armed career criminal under the ACCA. Petitioner maintains that the Supreme Court's invalidation of the ACCA's residual clause in *Johnson v. United States*, 135 S. Ct. 2551 (2015) entitles him to relief (the "*Johnson* claim"). Although the Government appeared to initially agree with Petitioner on his *Johnson* claim, it modified its position after this Court pointed out that Petitioner was not sentenced under the residual clause of the ACCA. Resp't's Resp. to Pet'r's Mot. for Reconsid. 3–4. In the alternative, Petitioner and the Government maintain that Petitioner is entitled to relief even if *Johnson* does not apply.

They argue that under the Supreme Court's recent decisions in *Descamps v. United States*, 133 S. Ct. 2276 (2013) and *Mathis v. United States*, 136 S. Ct. 2243 (2016), the Court of Appeals erred when it concluded that Petitioner's three prior convictions under the Georgia terroristic threats statute qualified as ACCA predicate offenses under the elements clause

of the ACCA (the "*Mathis/Descamps* claim").  They contend that the use, attempted use, or threatened use of physical force against another person is not an element of the statute, and therefore, any conviction under it is not a violent felony for ACCA purposes.

## I.    The *Johnson* Claim Lacks Merit

As this Court explained in its previous order, *Johnson* has no application to Petitioner's motion because he was sentenced under the elements clause, not the residual clause, of the ACCA. *See In re Hires*, 825 F.3d 1297, 1299 (11th Cir. 2016) (explaining that "prisoners who were sentenced under the elements or enumerated clauses, without regard to the residual clause at all, of course, do not fall within the new substantive rule in *Johnson*").  Petitioner has no *Johnson* claim, and continued insistence that he does is frivolous.  The Court correctly denied Petitioner's motion to correct his sentence based on *Johnson*.  Accordingly, it denies Petitioner's motion to reconsider that decision.

The Court, however, failed to address in its previous order Petitioner's alternative argument for relief under *Descamps* and *Mathis*.  It does so now.

## II.   The *Mathis/Descamps* Claim is Likely Time-Barred

Relying on *Descamps* and *Mathis*, Petitioner claims that his sentence was improperly enhanced under the ACCA because his

prior convictions for violating Georgia's terroristic threats statute are not "violent felonies" as defined by the ACCA. Since Petitioner did not file his petition until June 21, 2016, three years after the Supreme Court decided *Descamps*, it is difficult to understand how his claim based on *Descamps* is not time-barred. *See* 28 U.S.C. § 2255(f) (providing a one-year statute of limitations). Although he did file his petition within one year of the *Mathis* decision, a strong argument exists that it is still time-barred because *Mathis* is only a refinement of *Descamps* and creates no new right to be applied retroactively. *See Mathis*, 136 S. Ct. at 2247 (observing that the right upon which Petitioner relies has been recognized for more than 25 years); *id*. at 2251 (remarking that existing precedents resolve the case); *id*. at 2253 (noting that the Supreme Court has "already made exactly" the same point that it makes in *Mathis*).[4] Notwithstanding the existence of a strong statute of limitations defense, the Government curiously has not raised it and arguably has waived it by insisting that Petitioner is entitled to the relief he seeks. Consequently, the Court chooses to address the merits of Petitioner's

---

[4] A strong argument can also be made that *Descamps* was only an application of *Taylor v. United States*, 495 U.S. 575 (1990) and *Shepard v. United States*, 544 U.S. 13 (2005), and, thus, that Petitioner's claim was time-barred in 2006. *See Descamps*, 113 S. Ct. at 2283 ("Our caselaw explaining the categorical approach and its 'modified' counterpart all but resolves this case."); *id*. at 2286 ("Under our prior decisions, the inquiry is over.").

*Mathis/Descamps* claim rather than dismiss it *sua sponte* as time-barred.

**III. The *Mathis/Descamps* Claim Lacks Merit**

In *Descamps*, the Supreme Court addressed the issue of whether the defendant's conviction for burglary under California law qualified as a violent felony for purposes of the ACCA. Although the ACCA defines "violent felony" to include "burglary," not all burglaries are the same. To determine whether a state burglary conviction qualifies as a violent felony for ACCA purposes, the Court must "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.,* the offense as commonly understood. The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." *Id.* at 2281. The precise issue in *Descamps* was whether sentencing courts may consider documents such as indictments and jury instructions to determine whether a prior conviction qualifies as a violent felony under the ACCA based on the facts underlying the conviction even though the elements of the prior-convicted offense are categorically broader than the generic offense. *Id.* at 2281. The Supreme Court held that they may not.

The defendant in *Descamps* pleaded guilty to violating California's burglary statute. The statute provided that "'a

12

person who enters' certain locations 'with intent to commit grand or petit larceny or any felony is guilty of burglary.'" *Id.* at 2282 (quoting Cal. Penal Code § 459 (West 2010)). Under California's statute, a person could be convicted even though the person *lawfully* entered the location. The generic offense of burglary, on the other hand, requires the person's entry to be unlawful. *Id.* The sentencing judge looked at the plea colloquy between the defendant and the judge and determined that the defendant unlawfully entered the location, and that he thus committed a "violent felony" under the ACCA because his conduct matched the elements of generic burglary. *Id.* at 2282. The Supreme Court found error and reversed.

It held that a sentencing judge may not look beyond the elements of the prior-convicted offense to determine whether the factual basis for the conviction satisfies the elements of the generic offense, *i.e.*, whether Mr. Descamps, in fact, entered unlawfully, as generic burglary requires, or lawfully, when the statute defining the offense contains a single, indivisible list of elements that sweep broader than those of the generic offense, like the California burglary statute. *Id.* at 2285-86. To allow the sentencing judge to evaluate the defendant's actual conduct in committing the crime, or the means of the crime, would open the door to factfinding reserved only for a jury. *Id.* at 2288. But if a statute has alternative, divisible

elements of the crime, the only way that the sentencing judge can determine what elements had to be proved for defendant's conviction may be to look at limited evidence such as the indictment and the jury charges. When this must be done, the sentencing judge's factfinding is restricted to identifying those elements. *Id.* at 2285. The judge is still prohibited from evaluating the defendant's actual conduct. *Id.* at 2293.

In *Mathis,* the Supreme Court was faced again with whether a prior state burglary conviction qualified as a violent felony under the ACCA. Specifically, the Court had to decide whether an exception exists to the general rule that the prior crime qualifies as an ACCA predicate if, but only if, its elements are the same as, or narrower than, those of the generic offense. The exception considered by the Court was for a defendant who was "convicted under a statute that lists multiple, alternative means of satisfying one (or more) of its elements." *Id.* at 2247-48. The Court declined to find such an exception. *Id.* at 2248.

Although *Mathis* and *Descamps* apply specifically to determining whether a prior conviction for *burglary* qualifies as a violent felony for purposes of the ACCA, the analytical approach is easily adapted to the present case where Petitioner's prior convictions qualify as violent felonies if they have "as an element the use, attempted use, or threatened

use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The Court must determine the elements of the prior conviction and decide whether those elements include "the use, attempted use, or threatened use of physical force" against another person.

At the time Petitioner was convicted for violating the Georgia terroristic threats statute, the statute provided:

> A person commits a terroristic threat when he threatens to commit any crime of violence, or to burn or damage property, with the purpose of terrorizing another, or of causing the evacuation of a building . . . , or of otherwise causing serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience.

O.C.G.A. § 26-1307 (recodified as amended at § 16-11-37). Someone can be convicted under this statute in at least four different scenarios: (1) by threatening to commit any crime of violence with the purpose of terrorizing another or in reckless disregard of causing such terror; (2) by threatening to burn or damage property with the purpose of terrorizing another or in reckless disregard of causing such terror; (3) by threatening to commit any crime of violence with the purpose of causing the evacuation of a building, place of assembly or facility of public transportation, or otherwise causing public inconvenience, or in reckless disregard of causing such inconvenience; (4) by threatening to burn or damage property with the purpose of causing the evacuation of a building, place

of assembly or facility of public transportation, or otherwise causing public inconvenience, or in reckless disregard of causing such inconvenience.

The Supreme Court in *Mathis* counseled lower courts on analyzing such statutes that provide for alternative types of criminal liability:

> The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means. If they are elements, the court should do what we have previously approved: review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to [determine whether they include the use, attempted use, or threatened use of physical force against another person]. But if instead they are means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution. Given ACCA's indifference to how a defendant actually committed a prior offense, the court may ask only whether the *elements* of the state crime [include the use, attempted use, or threatened us of physical force against another person as is required to satisfy the elements clause of the ACCA].

136 S. Ct. at 2256.

The Georgia terroristic threats statute is alternatively phrased. For example, one could violate the Georgia statute by threatening to commit a crime of violence or by threatening to burn or damage a building, assuming the presence of the other elements; one could violate the statute by threatening a violent crime for the purpose of terrorizing someone; or one could violate the statute by threatening a violent crime for the

purpose of causing the evacuation of a building.  Depending on which of these alternative offenses were charged, the government would have to prove different elements.  For one, it would have to prove among other things that the defendant threatened to commit a crime of violence.  For another, it would have to prove that the defendant threatened to burn or damage a building.  One requires the purpose of terrorizing someone, while another requires the purpose of causing the building to be evacuated. The Court finds that these elements are not alternative means to commit one crime, but are instead elements of separate types of terroristic threat crimes.[5]

The Court therefore must review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction.[6]  After making that determination, the Court determines whether the elements of the prior conviction required proof of the use, attempted use, or threatened use of "physical force" against another person. "Physical force," under the ACCA's elements clause, means "violent force—that is, force capable of causing physical pain or injury to another person."  *Johnson v. United States*, 559 U.S. 133, 140 (2010).

---

[5] To use the jargon from the cases, the statute is "divisible."  *See Descamps,* 133 S. Ct. at 2281.
[6] Referred to in the cases as the "modified-categorical" approach. *See id.*

A review of the indictments for the three prior convictions discloses the following. Two of the indictments charged that Petitioner committed the offense of terroristic threats by threatening to murder someone; the third indictment charged Petitioner with violating the statute when he threatened an aggravated assault by simulating the use of a pistol against someone. *See* Minute Entry for 2/17/05 Sentencing Hearing Exs. 1-3, ECF Nos. 37-2 to -4. Thus, Petitioner was prosecuted under the terroristic threats provision that makes it a crime to threaten to commit any crime of violence with the purpose of terrorizing another person. The elements of that offense are: (1) a threat to commit any crime of violence; (2) with the purpose of terrorizing someone. *Poole v. State*, 756 S.E.2d 322, 326 (Ga. Ct. App. 2014). For two of Petitioner's terroristic threats convictions, the prosecution therefore had to prove that Petitioner threatened to commit the crime of violence of murder with the purpose of terrorizing the person he threatened. For the third conviction, the prosecution had to prove that Petitioner threatened to commit the crime of violence of aggravated assault with the purpose of terrorizing the person he threatened. *See Martin v. State*, 692 S.E.2d 741, 743 (Ga. Ct. App. 2010) (explaining that the threat of committing the *specific* crime of violence that is alleged in the indictment is an essential element of the terroristic threats offense). For

these convictions to be considered violent felonies under the ACCA, these elements must include a threat of force capable of causing physical pain or injury.

It is clear that a threat to murder someone necessarily includes a threat of force capable of causing physical pain or injury. Thus, those two prior convictions qualify as violent felonies under the elements clause of the ACCA.

Petitioner's third terroristic threat conviction was based on his threat to commit aggravated assault by simulating use of a pistol. The Court is not permitted to evaluate Petitioner's criminal conduct or means of committing the offense. Therefore, it is irrelevant how he committed the aggravated assault. The Court's examination is restricted to the elements of the offense. *See Mathis*, 136 S. Ct. at 2253 ("Find [the factual means of committing the offense] or not, by examining the record or anything else, a court still may not use them to enhance a sentence."). In Georgia, "a person commits the offense of aggravated assault when he or she assaults . . . (1) with intent to murder, to rape or to rob; (2) [w]ith a deadly weapon or with any object, device or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; or (3) [a] person or persons without legal justification by discharging a firearm from within a motor vehicle toward a person or persons." O.C.G.A. § 16-5-21(a).

Georgia defines assault as an "[a]ttempt[] to commit a violent injury to the person of another; or [the commission of] an act which places another in reasonable apprehension of immediately receiving a violent injury." O.C.G.A. § 16-5-20(a). Thus, to obtain a conviction for aggravated assault under Georgia law, the government must prove at a minimum that the defendant committed an act which placed another person in reasonable apprehension of immediately receiving a violent injury and that the defendant did so with the intent to murder, rape or rob that person or by using an object which, when used offensively against a person, is likely to result in serious bodily injury. Because the offense of aggravated assault requires a threat to do violence to another person, it necessarily involves the threat of force that is capable of causing pain or injury. Therefore, aggravated assault under Georgia law is a violent felony pursuant to the elements clause of the ACCA. *See In re Hires*, 825 F.3d at 1301 (holding that a conviction under Florida law for aggravated assault is categorically a violent felony under the ACCA elements clause because it requires a threat to do violence against someone). Furthermore, the Court finds that a conviction under Georgia's terroristic threats statute that is based upon the defendant's threat of aggravated assault for the purpose of terrorizing someone would likewise be a violent felony under the ACCA's elements clause.

The Government argues that the particular "crime of violence" upon which the terroristic threats charge is based is not an element of the terroristic threat offense but is a means of committing it. Once it makes this magical conclusion, it then follows under one of the approaches required by *Mathis* and *Descamps* that the only way that a conviction under Georgia's terroristic threats statute can be considered a violent felony under the ACCA is if *every* "crime of violence" that would support a terroristic threat conviction has as an element the use, attempted use or threatened use of physical force against the person of another. It does not matter that Petitioner was indicted for threatening to commit *murder or* an *aggravated assault to terrorize someone*, and thus that the government in order to obtain a conviction was required to prove to a jury beyond a reasonable doubt that he made the threat, that what he threatened to do amounted to a murder/aggravated assault under Georgia law if completed, and that his purpose was to terrorize someone. The Government argues that because some theoretical person in some yet-to-be identified Georgia court on some unknown occasion could be convicted of the offense of terroristic threats by threatening a "simple battery," which it argues does not qualify as a violent felony for ACCA purposes, then a conviction under Georgia's terroristic threats statute can *never* be used as a predicate offense for ACCA enhancement

purposes. It does not matter that a conviction of a particular terroristic threats offense, such as the ones for which Petitioner was convicted, required proof of elements that qualify the offense as a violent felony under the ACCA. The Government cites *Poole v. State*, 756 S.E.2d 322 and *Shepherd v. State*, 496 S.E.2d 530 (Ga. Ct. App. 1998) in support of its argument. The Government misunderstands those cases at best and mischaracterizes them at worst.

The Government cites *Poole* for the proposition that the specific crime of violence that forms the basis of a terroristic threat charge is not an essential element of the offense. *Id.* It is beyond dispute that "a threat to commit any crime of violence" is an essential element of a terroristic threat offense. *Poole*, 756 S.E.2d at 326. Therefore, the state must prove a threat to commit a "crime of violence" for a conviction under Georgia's terroristic threats statute. The Government argues, however, that the prosecution does not have to prove the essential elements of that "crime of violence" to obtain a conviction for terroristic threats. The Court does not understand how the government can be required to prove that a defendant threatened a "crime of violence," and yet not be required to prove that the defendant threatened to commit each of the elements that make that crime of violence a crime of violence. It is true that the Georgia legislature did not

enumerate the specific "crimes of violence" that can be a predicate for a terroristic threats offense. But that does not mean that a defendant can be convicted of the charge without being found to have threatened conduct that would satisfy the elements of the predicate "crime of violence" if actually committed. Even if the Constitution permitted it, the Court cannot conceive of how the prosecutor could logistically prove that someone threatened a "crime of violence" without demonstrating what the "crime of violence" is and thus its essential elements. It seems clear that when the Georgia courts indicate that the threat to commit a "crime of violence" is an essential element of the offense of terroristic threats, they necessarily contemplate that the essential elements of the particular "crime of violence" that the defendant threatened to commit are likewise elements of a terroristic threats offense.

In *Martin v. State*, 692 S.E.2d 741, the indictment for violating Georgia's terroristic threats statute accused the defendant of "threatening to commit 'a crime of violence to wit: murder upon the person of Barbara Hightower.'" *Id*. at 743. The Georgia Court of Appeals explained, "Accordingly, the State was required to prove two elements: (1) that [the defendant] threatened to murder Barbara and (2) did so with the purpose of terrorizing her." *Id*. The Government's argument here that the state did not have to prove that Petitioner threatened the

specific elements of murder and aggravated assault to obtain Petitioner's three terroristic threat convictions ignores this well established Georgia case law.

*Poole* does not contradict *Martin* and does not stand for the principle for which the Government cites it. In *Poole,* the defendant sought to have his indictment dismissed because it did not specifically identify the crime of violence the state claimed the defendant threatened. *Poole*, 756 S.E.2d at 327. The indictment simply alleged that the defendant threatened to commit a "crime of violence" to terrorize someone. *Id*. at 327–28. The Georgia court denied the defendant's motion, finding that the lack of particularity should have been attacked through a "special demurrer," not a "general demurrer," and that the defendant had waived the proper defense. *Id*. at 328–29. The Court did not hold, as the Government suggests, that the state was not required to prove at trial that the defendant threatened the essential elements of the specific "crime of violence" on which its terroristic threat charge rested.

In the present case, the indictments for Petitioner's terroristic threat charges specifically alleged that Petitioner committed the offense of terroristic threats by unlawfully threatening to commit a specific "crime of violence." Two of the indictments alleged that Petitioner did "threaten to commit a crime of violence, to-wit: murder, with the purpose of

terrorizing the said [victims]." Minute Entry for 2/17/05 Sentencing Hearing Ex. 1, ECF No. 37-2 at 2; *id.* Ex. 2, ECF No. 37-3 at 3. The third indictment stated that Petitioner threatened "to commit a crime of violence, to wit: Aggravated Assault, with the purpose of terrorizing Secret Service Agent Jim Maddox." *Id.* Ex. 3, ECF No. 37-4 at 4. Clearly, the threat of committing an aggravated assault/murder was an essential element of those offenses. And to obtain a conviction, the state was required to prove that Petitioner threatened to commit an act which if completed would amount to murder/aggravated assault.

Specifically, for the conviction based upon the threat of committing aggravated assault, the state had to prove, at a minimum, that Petitioner threatened to commit an act that placed another person in reasonable apprehension of immediately receiving a violent injury and that Petitioner had the intent to murder, rape, or rob that person or used an object which, when used offensively against a person, is likely to result in serious bodily injury. "Placing a person in reasonable apprehension of immediately receiving a violent injury"; "intent to murder, rape or rob"; and, "use of an object that is likely to result in serious bodily injury" are not merely *means* for committing the crime. They are essential elements that must be proved for a conviction for aggravated assault; thus, the threat

to commit each of those elements is an essential element that must be proved for a conviction for threatening to commit aggravated assault under Georgia's terroristic threats statute. *Poole* does not hold otherwise.

Here, Petitioner's simulating the use of a pistol toward the agent was the means of the crime. In determining whether this conviction is for a violent felony under the ACCA, *i.e.*, whether it involved the use, attempted use, or threatened use of force capable of causing physical injury or harm, the Court is prohibited from examining Petitioner's conduct, *i.e.*, his simulated use of a pistol. But the Court most certainly may examine the elements of the crime and determine whether they involve this requisite degree of force. Since the Eleventh Circuit has concluded that aggravated assault is a violent felony for ACCA purposes, it is hard to imagine how Petitioner's conviction for threatening an aggravated assault against someone for the purpose of terrorizing that person would not also be a violent felony for purposes of the ACCA.

Even if the essential elements of the particular "crime of violence" are not essential elements of a terroristic threats offense, a terroristic threats conviction could still be a violent felony for ACCA purposes as long as every theoretical conviction on that charge requires proof that the defendant used, attempted to use, or threatened to use physical force

capable of causing physical pain or injury against another.  The Government argues that the offense of simple battery is a crime of violence for purposes of Georgia's terroristic threats statute and that one can commit simple battery through provocation or insult without causing physical pain or injury. The Supreme Court has held that simple battery under Florida law is not a violent felony under the elements clause of the ACCA. *Johnson*, 559 U.S. at 145.  Because of this possibility, the Government contends that a conviction under Georgia's terroristic threats statute can *never* be a violent felony for ACCA purposes.  *See* Resp't's Resp. to Pet'r's Mot. for Reconsid. 7 ("Because the 'crimes of violence' under the Georgia terroristic threats statute include at least one crime that does not have the requisite degree of force required by the ACCA, the Georgia terroristic threats statute is overbroad and does not qualify as an ACCA violent felony.")[7]

The premise of the Government's argument is that simple battery based upon provocation or insult has been recognized by the Georgia courts as a "crime of violence" for purposes of the terroristic threats statute.  The Government relies upon *Shepherd v. State*, 496 S.E.2d 530 for this proposition.  But

_____

[7] A finding by the Court concurring with the Government's position would establish a precedent, at least for cases before the undersigned, that a prior conviction under Georgia's terroristic threats statute is never a violent felony for purposes of an ACCA sentence enhancement.

*Shepherd* does not hold that any type of simple battery is a "crime of violence" under the Georgia terroristic threats statute, much less simple battery based upon provocation or insult.

In *Shepherd,* the indictment alleged that the defendant threatened "to commit simple battery and battery" against a third party for the purpose of terrorizing the victim. *Id*. at 531. But the court never addressed whether simple battery standing alone was a "crime of violence" under the statute. The court in *Shepherd* simply held that the evidence at trial supported the jury verdict finding the defendant was guilty of the offense of committing a terroristic threat. That evidence included testimony that the defendant threatened to "kick the [victim's boyfriend's] ass" for the purpose of terrorizing the victim. *Id.* The threat to "kick someone's ass" could certainly be a threat to commit battery. *See* O.C.G.A. § 16-5-23.1(a) ("A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible harm to another."). And it appears clear that battery would be a violent crime for ACCA purposes. "Kicking someone's ass" could also constitute a type of simple battery under Georgia law. *See* O.C.G.A. § 16-5-23(a)(2) ("A person commits the offense of simple battery when he or she . . . [i]ntentionally causes physical harm to another."). And it seems clear that this type

of simple battery, if it were a felony, would also be a predicate offense under the ACCA because it involves the threat of force capable of causing physical injury or harm. But the Court does not understand how "kicking someone's ass" could constitute the type of simple battery that the Government contemplates and the type that the Supreme Court found in *Johnson* was not a violent felony for ACCA purposes. *See* O.C.G.A. § 16-5-23(a)(1) ("A person commits the offense of simple battery when he or she . . . [i]ntentionally makes physical contact of an insulting or provoking nature with the person of another."). Therefore, it is likely that the "crimes of violence" in the *Shepherd* indictment were battery and "intentional-physical-harm-to-another simple battery," not "insult/provocation simple battery." But the Court cannot say for sure because the court in *Shepherd* did not address the issue. And that's the point. The Government has no basis for the statement in its brief that *Shepherd* found "simple battery is a crime of violence for purposes of the terroristic threats statute," Resp't's Resp. to Pet'r's Mot. for Reconsid. 7. The court in *Shepherd* did not make that determination. *Shepherd* does not hold, or even suggest, that one can be guilty under Georgia's terroristic threats statute by engaging in conduct that does not involve the use, attempted use, or threatened use of physical force capable of causing physical injury or harm.

It would be sheer sophistry for this Court to conclude that "crime of violence" under Georgia's terroristic threats statute does not include "violence" as a component. "Laws are made for men of ordinary understanding, and should therefore be construed by the ordinary rules of common sense. Their meaning is not to be sought for in metaphysical subtleties, which may make anything mean everything or nothing, at pleasure." *Lanthrip v. State*, 218 S.E.2d 771, 774 (Ga. 1975).[8] The Court is confident that when the Georgia legislature used the term "violence," they meant "violence" as that word is ordinarily understood. When the United States Supreme Court had occasion to define "crime of violence" under federal law, they determined that it included a "category of violent, active crimes" which it also has determined involve force capable of causing physical harm or injury. See *Johnson*, 559 U.S. at 140 (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004)) (interpreting "crime of violence" under 18 U.S.C. § 16). The Court can conceive of no reason why Georgia courts would not interpret "crime of violence" similarly. And the parties have certainly not pointed the Court to any authority suggesting otherwise. The Court rejects the Government's argument that a conviction under Georgia's terroristic threats statute can be based upon a "crime

---

[8] Georgia Supreme Court Justice Ingram attributed this quotation to Thomas Jefferson. *See Lanthrip*, 218 S.E.2d at 774 n.2.

of violence" that does not involve the threat of physical pain or injury.

Because Petitioner had three prior felony convictions that qualify as "violent felonies" under § 924(e)(2)(B)(i) of the ACCA, his sentence was correctly enhanced. He therefore is not entitled to a correction of that sentence.

CONCLUSION

Upon reading Petitioner's presentence report for the first time approximately twelve years ago, this Court was instinctively concerned at the prospect of the Government depriving someone of his liberty without having to submit its accusation to that "great bulwark of our civil and political liberties, trial by jury," *Apprendi*, 530 U.S. at 477. In the years that have followed, courts in similar cases have struggled to draw the line between what juries and judges must decide. The Supreme Court has tried to help by providing clarification in cases like *Descamps* and *Mathis*.

If the Court of Appeals believes that its previous ruling in this case should now be reconsidered in light of the Supreme Court's clarification of the law, as the Government and Petitioner insist it must, then the Court of Appeals is the appropriate court to make that determination. Although this Court continues to believe that the enhancement of Petitioner's sentence runs afoul of *Apprendi*, a majority of the members on

the Supreme Court do not yet agree. And the Supreme Court's opinions in *Descamps* and *Mathis* suggest that the Court of Appeals decision in *Greer II* can be reconciled with *Apprendi*. For this reason and because this Court does not have the authority to overrule the Eleventh Circuit's prior decision in this case even if it believed it to be wrong, it cannot grant Petitioner the relief he seeks, notwithstanding the fact that such a ruling would not be appealed. Petitioner's motion for reconsideration (ECF Nos. 85 & 86) is denied.[9]

This 1st day of May, 2017.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[9] For the future application of today's order by the United States Probation Office for the Middle District of Georgia in the preparation of presentence reports, the Court intends to direct the Probation Office to consider any prior conviction under Georgia's terroristic threats statute that is based upon an allegation in the indictment that the defendant threatened to commit a crime of violence for the purpose of terrorizing someone to be a violent felony for ACCA purposes. Any defendant will have an opportunity to object to any such determination prior to being sentenced, and upon the assertion of an objection, the Court will make a *de novo* evaluation consistent with the principles explained in today's order.